Marisol Nagata, Esq. (SBN 221387)
Kelli Brown, Esq. (SBN 328176)
GHIDOTTI | BERGER LLP
1920 Old Tustin Ave.
Santa Ana, CA 92705
Ph: (949) 427-2010
Fax: (949) 427-2732
bknotifications@ghidottiberger.com

*Attorney for Secured Creditor,*
*Center Street Lending VIII SPE, LLC, its successors and/or assigns*

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In Re: | CASE NO.:  8:23-bk-12195-MH |
| JOHN FOX, | CHAPTER 13 |
| Debtor. | **OBJECTION TO PROPOSED CHAPTER 13 PLAN AND CONFIRMATION THEREOF** |
| | Hearing Date: December 14, 2023 |
| | Time: 10:30am |
| | Courtroom: 6C |
| | Location: 411 W Fourth Street |
| |              Santa Ana, CA 92701 |
| | Judge: Hon. Mark D. Houle |

**TO THE HONORABLE MARK D. HOULE, UNITED STATES BANKRUPTCY COURT JUDGE, THE DEBTOR, THE CHAPTER 13 TRUSTEE, AND OTHER INTERESTED PARTIES:**

Secured Creditor, Center Street Lending VIII SPE, LLC, its successors and/or assigns ("Secured Creditor"), in the above entitled bankruptcy proceeding, hereby submits the following objections to confirmation of the proposed chapter 13 plan ("Objection") filed by John Fox ("Debtor") on October 24, 2023 as Docket Number 4.

## STATEMENT OF FACTS

1.      On December 9, 2020, John Daniel Fox ("Debtor") executed a Grant Deed granting interest in the property commonly known as 509 Ventaja, Newport Beach, California 92660 ("Property") to Radonix, Inc.  The Grant Deed was recorded in the Official Records of the Orange County Recorders Office on December 24, 2020 as Document Number 2020000764288.  A true and correct copy of the Grant Deed is attached hereto as Exhibit "1".

2.      Secured Creditor is the holder and in possession of a certain original note ("Note") dated December 15, 2020 in the original principal amount of $900,000.00 executed by Radonix, Inc. through its President, Shahram Tork ("Non-Filing Borrower") in favor of Secured Creditor.  The Note is secured by a first priority Deed of Trust ("Deed of Trust") of the same date, December 15, 2020, encumbering the Property.  The Deed of Trust was recorded on December 24, 2020 as Document Number 2020000764289 in the Official Records of the Orange County Recorder's Office.  True and correct copies of the Note and Deed of Trust are attached hereto as Exhibits "2" and "3", respectively.

3.      On or about December 24, 2020, a junior Deed of Trust ("Second Lien") was recorded against the Property as Document Number 2020222764290 by Debtor as the Lender and Non-Filing Borrower as the Trustor in the amount of $300,000.00.

4.      A foreclosure sale was set to be held with respect to the Property on October 25, 2023.

5.      On October 24, 2023, one day before the scheduled foreclosure sale, Debtor filed a bankruptcy petition under chapter 13 in the Central District of California Bankruptcy Court, Santa Ana Division as case number 8:23-bk-12195-MH.  On the same day, Debtor filed his Schedules, which were almost entirely blank but, namely, indicates he has no creditors who have claims secured by property.  Debtor also filed a proposed chapter 13 plan ("Plan"), which provided for Prestige Default Services ("PDS"), Secured Creditor's foreclosing entity, in Class 2 and intends to maintain post-petition payments direct to PDS.

6.      A confirmation hearing is scheduled to be held on December 14, 2023 at 10:30am.

Objection to Plan

## **ARGUMENT**

Under 11 U.S.C. §1325, the provisions for plan confirmation in a Chapter 13 have been set.  The Plan must comply with all applicable provisions of 11 U.S.C. § 1325 to be confirmed.  Specifically, the Plan must be proposed in good faith and, with respect to each allowed secured claim provided for by the plan and the holder of such claim has accepted the plan. 11 U.S.C. § 1325(a)(3) and (a)(5)(A).  Based on the foregoing and as more fully detailed below, the Plan cannot be confirmed as proposed.

First, although Debtor has proposed to maintain the post-petition monthly mortgage payments, Secured Creditor objects to the Plan on the basis that the Debtor is not a borrower on the loan and; thus, he is not in privity of contract with Secured Creditor.  No post-petition payments are due and owing by Debtor, Debtor is not under any obligation to pay such payments, nor is Secured Creditor obligated to accept such payments from Debtor as proposed.  Additionally, Debtor does not even provide for Secured Creditor specifically, but rather provides for maintenance of post-petition payments to PDS, which would be incorrect as the obligation of payments is not as to PDS directly but rather owed to Secured Creditor.

Second, the Plan is not proposed in good faith.  As stated above, this bankruptcy case was filed one day before a scheduled foreclosure sale was set to occur on this Property.  Debtor purports to have interest in the Property; however, his Schedules do not appear to say the same.  In addition to the Schedules, the proposed Plan is also almost totally blank.  On its face, this case appears to be nothing more than a skeletal filing.  Additionally, the Grant Deed recorded on December 24, 2020 shows that Debtor conveyed his interest in the Property to the Non-Filing Borrower.  Based upon the information regarding the Second Lien, Debtor now merely has a junior lien interest in the Property.  Based on the foregoing reasons, it can only be concluded that this case was filed for the sole purpose of stalling the foreclosure sale and allowing Secured Creditor to proceed with its rights and remedies provided to its under the loan documents.

Based on the foregoing, this Plan cannot be confirmed.

/ / /

Objection to Plan

## CONCLUSION

Any chapter 13 plan proposed by the Debtor must provide for and eliminate the objections specified above in order to be reasonable and to comply with applicable provisions of the Bankruptcy Code. Secured Creditor respectfully requests that confirmation of the proposed chapter 13 plan as proposed by the Debtor be denied.

**WHEREFORE**, Secured Creditor prays as follows

a.      That confirmation of the proposed Chapter 13 Plan be denied;

b.      For such other relief as this Court deems proper.

Dated: November 30, 2023                    GHIDOTTI | BERGER LLP


By: /s/ *Kelli Brown*_____
Kelli Brown, Esq. (SBN 328176)
Counsel for Secured Creditor

4

# EXHIBIT "1"

**RECORDING REQUESTED BY:**
First American Title Company

**AND WHEN RECORDED MAIL TO:**

RADONIX, INC.
*2600 Michelson #1700*
*Irvine, CA 92612*

|||||||||||||||||||||||||||||||||||||| 10.00
* $ R 0 0 1 2 3 7 5 5 3 0 $ *
**2020000764288 8:00 am 12/24/20**
7 507A G02   2 07
660.00 660.00 0.00 0.00 3.00 0.00 0.000.000.00 0.00

---

**THIS SPACE FOR RECORDER'S USE ONLY:**

| Title Order No.: | **GRANT DEED** | **Escrow No.:** 049541 |
|---|---|---|
| AP#: 440-281-28 | | |

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
**DOCUMENTARY TRANSFER TAX is** $1,320.00
[X] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[ ] Unincorporated area   [X] City of Newport Beach **AND**

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**JOHN DANIEL FOX, a Married Man, as his sole and separate property**

hereby GRANT(s) to:

**RADONIX, INC., a California Corporation**
the real property in the City of Newport Beach, County of Olrange, State of California, described as:
LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART HEREOF
**Also Known as**: 509 VENTAJA, NEWPORT BEACH, CA  92660

Dated December 9, 2020

JOHN DANIEL FOX

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _Los Angeles_
On _12-17-2020_ before me, _L.D Garces_ A Notary Public personally appeared _John Daniel Fox_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)

> L. D. GARCES
> Notary Public – California
> Los Angeles County
> Commission # 2180425
> My Comm. Expires Jan 20, 2021

MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS SHOWN ABOVE:

**EXHIBIT A**
Legal Description

The land hereinafter referred to is situated in the City of Newport Beach, County of Orange, State of California, and is described as follows:

Parcel 1:

Lot 23 of Tract No. 6905, in the City of Newport Beach, County of Orange, State of California, as per map recorded in Book 308, Pages 27 to 32 inclusive of Miscellaneous Maps, in the office of the County Recorder of said County.

Except therefrom all oil, oil rights, minerals, mineral rights, natural gas rights and other hydrocarbons by whatsoever name known that may be within or under the parcel of land hereinabove described, together with the perpetual right of drilling, mining, exploring and operating therefor and storing In and removing the same from said land or any other land, including the right to whipstock or directionally drill and mine from lands other than said land, oil or gas wells, tunnels and shafts into, through or across the subsurface of said land, and to bottom such whipstocked or directionally drilled wells, tunnels and shafts under and beneath or beyond the exterior limits thereof, and to redrill, retunnel, equip, maintain, repair, deepen and operate any such wells or mines, without, however, the right to drill, mine, store, explore and operate through the surface or the upper 500 feet of the subsurface of said land, as reserved in the deed from The Irvine Company recorded in Book 12415, Page 992, Official Records.

Parcel 2:

An appurtenant non-exclusive easement for ingress and egress throughout Lot 65 of Tract No. 6905, as shown on a map recorded in Book 308, Pages 27 to 32 inclusive of Miscellaneous Maps, records of Orange County, California.

APN: 440-281-26

# EXHIBIT "2"

## PROMISSORY NOTE

Loan Number: 64768, in the amount of  U.S. Nine Hundred Thousand Dollars and Zero Cents ($900,000.00) dated 12/15/2020

Property Address: 509 Ventaja, Newport Beach, CA 92660

**1.      BORROWER'S PROMISE TO PAY**

FOR VALUE RECEIVED, the undersigned, Radonix, Inc., a California Corporation , (hereinafter called **"Borrower"**) promises to pay to the order of Center Street Lending VIII SPE, LLC, A Delaware Limited Liability Company (hereinafter called **"Lender,"** which term shall include any holder of this Note, which also hereinafter may be called **"Note Holder"**) without offset at the Lender's office located at 18301 Von Karman Ave, Suite 330, Irvine , CA 92612 (or at such other address as the Lender shall designate), the principal amount not to exceed U.S. Nine Hundred Thousand Dollars and Zero Cents ($900,000.00), or so much thereof as may be advanced and outstanding from time to time (**"Principal"**), together with interest on the Principal balance outstanding from time to time at the rate provided in this Note and all other sums owed by Borrower.  This is a Single advance note (**"Note"**), and in no event shall the total Principal advances hereunder exceed $900,000.00 (Nine Hundred Thousand Dollars and Zero Cents). Lender's obligation to advance Principal amounts hereunder shall at all times be subject to Lender's sole and absolute discretion.  The entire unpaid balance of the Principal and interest, if not sooner paid, shall be and become due and payable on 12/15/2021, which is the (**"Maturity Date"**) for this Note.

**2.      INTEREST**

Interest will be charged for each day on unpaid Principal, interest and all other sums owed by Borrower to Lender hereunder and under the Deed of Trust (defined below) (collectively **"Obligations"**) from 12/15/2020 until the Obligations owed by Borrower have been paid to Lender.  Borrower will pay interest at a daily interest rate of $1/360^{th}$ of Eight and Fifty Hundredths (8.5000%).  Borrower will pay interest on the amount lent or deemed to be lent to Borrower even though the Lender may hold some of Borrower's cash or other property as collateral for repayment. Daily rate of interest referred to herein shall be calculated on the basis of a three hundred sixty (360) day year for the actual days elapsed (including the first day and the last day) during which the Principal is outstanding.  The interest rate required by this Section 2 is the rate Borrower will pay before any default.

**3.      PAYMENTS**
**(A)      Time and Place of Payments**

Borrower will make a monthly payment on the 1ST day of each month beginning on 02/01/2021 ("Payment Date"). Borrower will make these payments every month until Borrower has paid all of the Obligations.  Each monthly payment will be applied as set forth in Section 3(C), Application of Payments.  If Borrower still owes amounts under this Note on the Maturity Date, Borrower will pay those amounts in full on the Maturity Date.  If Borrower has prepaid interest in a given month but prepays this Note in full during that month, Borrower will be credited the unearned interest.

Borrower will make monthly payments at 18301 Von Karman Ave, Suite 330, Irvine , CA 92612 or at a different place if required by the Lender.  Borrower recognizes that Borrower may not receive notice from Lender of required interest payments or the Maturity Date but is still required to make those payments when they are due or be subject to penalties, including interest at the Default Rate and late fees, as outlined in this Note or in the Deed of Trust securing this Note.

**(B)      Amount of Monthly Payments**

Borrower's monthly interest payment will be in the amount of U.S. Six Thousand Three Hundred Seventy-Five Dollars and Zero Cents  ($6,375.00) based on the Principal advanced by Lender under this Note as of 12/15/2020. Borrower's monthly interest payment will increase if Lender advances additional Principal amounts under this Note or additional Obligations accrue under this Note, the Deed of Trust or other Loan Documents, as defined in the Deed of Trust.

**(C)      Application of Payments**

Payments made under this Note will be applied to pay the following in the order stated: (1) costs of collection and Late Charges and fees, if any; (2) any interest due and payable under this Note; (3) future interest; and (4) in the event all Obligations under the Note, Deed of Trust or Other Loan Documents are paid in full, to Principal.

**(D)      Insufficient Funds**

If at any time during the term of this Note, or any extension thereof, the Borrower tenders a check or any form of payment to satisfy any obligation due herein, and in the event that such payment is returned due to insufficient funds ("NSF Payment"), then the following will occur:

The Borrower will, within 24 hours of notice, tender a cashier's check replacing the full amount of the NSF Payment that was returned.  From that point forward, Lender may require and Borrower hereby agrees that all payments due the Lender will be made in certified funds only.

For each instance when a payment tendered by Borrower is returned unpaid for any reason, Borrower agrees to pay to Lender a fee of U.S. ONE HUNDRED DOLLARS ($100.00) in addition to any other remedies contained herein or entitled to Lender.

**4.      BORROWER'S RIGHT TO REPAY**

Borrower may prepay the Principal amount of this Note at any time, but only in full.  Partial prepayments will be applied only to future interest payments and will not reduce the Principal amount due under this Note or the amount of monthly interest payments due under this Note.

**IF BORROWER PAYS OFF THIS NOTE WITHIN THE FIRST THIRTY (30) DAYS AFTER IT WAS MADE, THEN THE LENDER WILL RECEIVE A FULL THIRTY (30) DAYS INTEREST, REGARDLESS OF THE NUMBER OF DAYS THAT HAVE ELAPSED FROM INCEPTION OF THIS LOAN.  THE PARTIES AGREE THAT THIS AMOUNT IS A REASONABLE ESTIMATE OF THE AMOUNT NEEDED TO REIMBURSE LENDER FOR THE COSTS OF MAKING THIS LOAN.**

**5.      LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. The Lender may choose to make this refund by reducing the Principal Borrower owes under this Note or by making a direct payment to Borrower.

**6.      EVENTS OF DEFAULT**

Each of the following shall constitute an event of default ("**Event of Default**") under this Note, and the Lender may, at its option, declare this Note (including without limitation, all accrued interest) due and payable immediately regardless of the Maturity Date:

**(A)**      Borrower's failure to pay any of the Obligations including, but not limited to, the Principal, and/or any payment due, and/or accrued interest due under this Note on or before the scheduled payment date, and/or Maturity

Date without any requirements of notice from Lender of such failure to pay;

**(B)**     (i) Any Borrower or any Guarantor for the Note, or any individual who is a principal of Borrower or any Guarantor, or any family member of any such person, occupying 509 Ventaja, Newport Beach, CA 92660 as their primary, secondary, or other residence, or (ii) the use of any portion of the proceeds of the loan for purposes other than business or commercial purposes.

**(C)**     Any Borrower or any Guarantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note, the Deed of Trust, any Guaranty or in any other Loan Document or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender, any Affiliate Lender (as defined in Section 12 below), or any person who subsequently holds more than one promissory note of Borrower ("**Multiple Lender**") and such Borrower or Guarantor.

**(D)**     Any Borrower's or any Guarantor's (i) assignment for the benefit of its creditors, or (ii) application for, consent to, or acquiescence in, the appointment of a trustee, receiver or other custodian for such Borrower or Guarantor, the property of Borrower or Guarantor or any part thereof, or in the absence of any application, consent or acquiescence, the appointment of a trustee, receiver or other custodian for such Borrower or Guarantor or a substantial part of the property of such Borrower or Guarantor, which appointment is not discharged within thirty (30) days;

**(E)**     Commencement of any case under Title 11 of the United States Code or any other bankruptcy, re-organization, receivership, custodianship, or similar proceeding under any state or federal law by or against any Borrower or Guarantor and, with respect to any such case or proceeding that is involuntary, such case or proceeding is not dismissed within thirty (30) days of the filing thereof;

**(F)**     In the event any Borrower, Affiliate (as defined of Borrower, Guarantor or Affiliate of Guarantor (including any entity in which such Borrower or Guarantor is a member, partner, shareholder or otherwise holds an interest therein) is obligated under more than one promissory note, or Note, with Lender, or an Affiliate Lender (as defined in the Cross-Collateralization and Cross-Default Agreement to which Borrower or Guarantor, or and Affiliate of Guarantor, or an Affiliate of Borrower, is a party), each Borrower and Guarantor agrees that an event of default in the payment or performance under any such Lender's or Affiliate Lenders' Notes shall constitute a default under this Note, and a default under this Note shall cause a default under all other such Lenders' and Affiliate Lenders' Notes;

**(G)**     The occurrence of any event of default under (i) the Deed of Trust, Security Agreement and Fixture Filing (and Assignment of Rents and Leases) (the "**Deed of Trust**") dated as of 12/15/2020 and executed by Borrower, as trustor, for the benefit of Lender, to secure this Note, (ii) the Hazardous Substances Certificate and Indemnity Agreement executed by Borrower for the benefit of Lender or (iii) any other documents, certifications or agreements Borrower has entered into in connection with the Note or the other Loan Documents;

**(H)**     The occurrence of any event of default under that certain Guaranty executed by Shahram Tork  who is (are) identified as the Guarantor(s) in favor of Lender dated 12/15/2020.

**(I)**     **Notice of Default**

If Borrower is in default of this Note, the Lender may send Borrower a written notice telling Borrower that the full amount of Principal which has not been paid and all accrued and unpaid interest, and all sums owed by Borrower that have not been paid are immediately due and payable, provided that no such notice is required to be sent to Borrower, but all such amounts shall still be due and payable.

**(J)**     **No Waiver By Lender**

Even if, at a time when Borrower is in default, the Lender does not require the Borrower to pay immediately in full as described above, the Lender will still have the right to require the Borrower to do so if Borrower is in default at a later time.

**(K)**     **Payment of Lender's Costs and Expenses**

Borrower agrees to pay Lender all out-of-pocket expenses, including attorney's fees incurred by Lender in collecting this Note or in preserving or disposing of any collateral granted as security for the payment of this Note or in defending any claim arising out of the execution of this Note or the Obligations which it evidences.

**DURING THE CONTINUANCE OF AN EVENT OF DEFAULT, LENDER MAY, AT ITS OPTION, WITHOUT NOTICE, DECLARE THE ENTIRE UNPAID PRINCIPAL PLUS ANY OTHER AMOUNTS**

OWED BY BORROWER TO LENDER UNDER THIS PROMISSORY NOTE OR THE DEED OF TRUST IMMEDIATELY DUE AND PAYABLE PROVIDED THAT ANY DEFAULT UNDER PARAGRAPH (E) SHALL RESULT IN AN AUTOMATIC ACCELERATION OF SUCH AMOUNTS WITHOUT ANY ACTION BY LENDER.  LENDER MAY ALSO DECLARE, WITHOUT NOTICE, ANY OTHER NOTES FROM BORROWER OR GUARANTOR HELD BY LENDER, LENDER OR AFFILIATE LENDERS ALSO IMMEDIATELY DUE AND PAYABLE.

**7.      BORROWER'S FAILURE TO REPAY AS REQUIRED**

**(A)      BORROWER AGREES THAT IT WOULD BE IMPRACTICABLE OR EXTREMELY DIFFICULT TO DETERMINE, PRIOR TO SIGNING THIS NOTE, THE ACTUAL DAMAGES WHICH WOULD BE SUFFERED BY LENDER IF BORROWER FAILS TO REMIT TIMELY PAYMENTS HEREUNDER.  LENDER'S DAMAGES WOULD INCLUDE, WITHOUT LIMITATION, LOST OPPORTUNITY COSTS, HIGHER CAPITAL COSTS AND ADDITIONAL COSTS OF ADMINISTRATION.  BORROWER THEREFORE AGREES THAT THE FOREGOING RATE OF INTEREST, THE DEFAULT RATE, PLUS LATE CHARGES, CONSTITUTE REASONABLE DAMAGES PAYABLE TO LENDER UNDER THE CIRCUMSTANCES EXISTING AT THE TIME THIS CONTRACT WAS MADE AND AGREES TO PAY SUCH LATE CHARGES AND DEFAULT RATES OF INTEREST TO THE LENDER AS LIQUIDATED DAMAGES TO COVER EXPENSES INCURRED IN HANDLING ANY SUCH DELINQUENT PAYMENTS.**

**(B)      Late Charges on Default**

**(i)      Late Charge for Overdue Periodic Payments**

If the Lender has not received the full amount of any monthly or other periodic payment by the end of TEN (10) calendar days after the date it is due, which ten (10) calendar days shall be inclusive of the date a payment is due ("**Grace Period**"), Borrower will pay a Late Charge to the Lender.  The charge shall be assessed on the day immediately after the end of the Grace Period in an amount equal to TEN PERCENT (10%) of the amount that is due ("**Late Charge**").  Borrower will pay this Late Charge promptly but only once on each late payment.

**(ii)      Late Charge After Maturity or an Event of Default**

If the Lender has not received the full amount of Principal, interest and other amounts due at the Maturity Date (whether due to acceleration or otherwise) by the Grace Period, Borrower will pay a late balloon payment charge to the Lender.  The late balloon payment charge shall be assessed on the day immediately after the end of the Grace Period and shall equal the product of (x) the sum of one and the number of months that have elapsed since the earlier of i) the Maturity Date or ii) an Event of Default, and (y) the largest late charge for periodic payments which was assessed or could have been assessed under subparagraph 7(A)(i) above (whether or not assessed) with respect to any periodic payment under this Note.

**(C)      Interest on Default**

If Borrower is in default under this Note, as that event is contemplated under Section 6 of this Note, or defaults under any other clause of any document associated with this Note or the Loan Documents, and such default is not cured within any applicable cure or grace period, then the entire unpaid principal balance shall automatically bear an annual interest rate at the Default Rate (as defined in Section 7(C)(i) below).

**(i)      Default Rate of Interest Applied for Overdue Periodic Payments After Thirty Days**

If the Lender has not received the full amount of any monthly or other periodic payment by the Payment Date for the subsequent month (excluding the Grace Period), then, in addition to the Late Charge and all other rights contained in this Note, the entire unpaid principal balance amount and obligations that are due shall automatically begin to accrue interest at the lesser of a daily rate of 1/360th of 18.00% or the greatest permissible amount under California law (the "Default Rate") retroactively as of the prior payment date.  Interest at the Default Rate will continue to apply to the entire unpaid principal balance until all past due periodic payments, plus any fees or costs or obligations past due are paid in full.

**(ii)     Maturity Default**

If the Lender has not received the full amount of Principal, interest and other amounts due at the Maturity Date (whether due to acceleration or otherwise) before the termination of the Grace Period, the amount that is due shall automatically begin to accrue interest at the Default Rate retroactively as of the Maturity Date until the amounts due are paid in full, the default is cured and, if applicable, the Loan is reinstated.

**8.     GIVING OF NOTICES**

Unless applicable law requires a different method, all notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one (1) day after delivery to a nationally recognized overnight courier service, or sent by United States Registered or Certified Mail- Return Receipt Requested, postage prepaid, to the respective addresses as follows:

If to Borrower:
    2600 Michelson Drive, Suite 1700
    Tustin, CA 92780

If to Original Lender:
    Center Street Lending VIII SPE, LLC, A Delaware Limited Liability Company
    18301 Von Karman Ave, Suite 330, Irvine, CA 92612 .

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

**9.     OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person or entity signs this Note, the obligations of such persons or entities with respect to this Note shall be joint and several and each person or entity is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person or entity who is a Guarantor, surety or endorser of this Note is also obligated to do these things (together the persons or entities who sign this Note the "**Obligors**"). Any person who takes over these obligations, including the obligations of a Guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note and is also an Obligor. The Lender may enforce its rights under this Note against each Obligor individually, or against all or some Obligors together jointly or severally. This means that any one Obligor or entity may be required to pay all of the amounts owed under this Note.

**10.    TIME OF ESSENCE**

Time is of the essence with regard to each and every term, condition and obligation of Borrower under this Note. The time of any notice shall begin to run on the date of the mailing of such notice. For purposes hereof the refusal of certified mail shall constitute receipt.

**11.    WAIVERS**

Borrower and each other "**Obligor**" waives presentment, demand, protest and notice of dishonor, to the fullest extent permitted by law, waives all exemptions, whether homestead or otherwise, as to the Obligations evidenced by this Note, waives any rights which it may have to require Lender to proceed against any other person, agrees that without notice to any Obligor and without affecting any Obligor's liability, Lender, at any time or times, may grant extensions of the time for payment or other indulgences to any Obligor or permit the renewal of this Note,

or permit the substitution, exchange or release of any security for this Note and may add or release any Obligor primarily or secondarily liable, and agrees that Lender may apply all moneys made available to it from any Obligor or, except as otherwise provided in the Deed of Trust, the proceeds from the disposition of any security for this Note, either to this Note or to any other obligation of any Obligor to Lender

**12.      UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Lender under this Note, a Mortgage, Deed of Trust, or Security Deed (the "**Security Instrument**" also referred to herein, as the "**Deed of Trust**"), dated the same date as this Note, protects the Lender from possible losses which might result if Borrower and the other Obligors do not keep the promises which Borrower and such Obligors made in this Note. That Security Instrument describes how and under what conditions Borrower may be required to make immediate payment in full of all amounts Borrower and the other Obligors owe under this Note. Some, but not all, of those conditions are described as follows:

If all, or any part, of the subject property, or any interest therein, is sold, conveyed, alienated, transferred or encumbered (or if a beneficial interest in Trustor is sold, transferred or encumbered and Trustor is not a natural person), whether voluntary or involuntarily, without Beneficiary's prior written consent, which Beneficiary may withhold in its sole and absolute discretion, Beneficiary shall have the right, at its option, except as prohibited by law, to declare any indebtedness or obligations secured hereby, irrespective of the maturity date specified in any Note evidencing the same, immediately due and payable. If Beneficiary exercises this option, Beneficiary shall give Trustor notice of acceleration. The notice shall provide a period of not less than ten (10) days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Trustor fails to pay these sums prior to the expiration of this period, Beneficiary may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

For purposes "**Security Instrument**" shall also include any other deed of trust, security agreement or guaranty agreement securing any obligation of Borrower to any entity now or hereafter owned, controlled or managed by Center Street Lending Corporation or Center Street Lending Management, LLC, including, but not limited to: i) Center Street Lending Fund I, LLC, ii) Center Street Lending Fund IV, LLC, iii) Center Street Lending Fund IV SPE, LLC, iv) Center Street Lending V, LLC, v) Center Street Lending MP IV, LLC, vi) Center Street Lending MP III SPE, LLC, vii) Center Street Lending Fund X, LLC, viii) Center Street Loans, Inc. and ix) Center Street Lending VIII SPE, LLC (individually "**Affiliate Lender**" and collectively "**Affiliate Lenders**") whether currently existing or subsequently executed by Borrower in favor of Affiliate Lenders. Any default in the obligations of Borrower and the other Obligors owing to Lender or any Affiliate Lender under the terms and provisions of any note, loan agreement or any other loan documentation relating to any such obligations shall constitute a default under all of the Lender's and Affiliate Lenders' notes evidencing all of said obligations, as well as under the Security Instruments, and any such default shall entitle Lender and Affiliate Lenders to exercise each and every right available to them under each and every of said documents, including, but not limited to, the right to foreclose against and sell any collateral, whether real or personal, securing any of said obligations as if said collateral secured all of said Lender's and Affiliate Lender's obligations.

**13.      NON-WAIVERS**

Lender shall not be deemed to have waived any of Lender's rights or remedies hereunder unless such waiver is express and in a writing signed by Lender; and no delay or omission by Lender in exercising, or failure by Lender on any one or more occasions to exercise, any of Lender's rights hereunder, under the Deed of Trust or under any other Loan Document, or at law or in equity, including, without limitation, Lender's right, after any Event of Default, to declare the entire indebtedness evidenced hereby immediately due and payable, shall be construed as a novation of this Note or shall operate as a waiver or prevent the subsequent exercise of any or all of such rights. Acceptance by Lender of any portion or all of any sum payable hereunder whether before, on or after the due date of such payment, shall not be a waiver of Lender's right either to require prompt payment when due of all other sums payable hereunder or to

exercise any of Lender's rights, powers and remedies hereunder under the Deed of Trust, or under any other Loan Document. A waiver of any right in writing on one occasion shall not be construed as a waiver of Lender's right to insist thereafter upon strict compliance with the terms hereof and no exercise of any right by Lender shall constitute or be deemed to constitute an election of remedies by Lender precluding the subsequent exercise by Lender of any or all of the rights, powers and remedies available to it hereunder, under the Deed of Trust, under any other Loan Document or at law or in equity. Nothing herein shall be deemed to be a waiver of any right which Lender may have under Sections 506(a), 506(b), 111(b) or any other provisions of the Bankruptcy Code to file a claim for the full amounts of the debt secured by the other Loan Documents, or to require that all collateral shall continue to secure all of the debt owing to Lender in accordance with this Note and the other Loan Documents.

**14.     APPLICABLE LAW**
This Note is governed by the laws of the State of California. Borrower agrees that if there is a lawsuit, upon the request of Lender, Borrower shall submit to the jurisdiction of the state courts located in the County of Orange, State of California, or the applicable federal district court that covers said county, and the lawsuit shall be tried and litigated therein. Borrower waives any right Borrower may have to assert the doctrine of forum non conveniens or to object to such venue.

**15.     BUSINESS PURPOSE**
The proceeds of this Note shall only be used to acquire or carry on a business, professional investment, or commercial enterprise or activity.

**16.     MODIFICATION**
This Note may not be modified except by an instrument in writing and signed by Lender.

**17.     SEVERABILITY**
If at any time any provision of this Note is or becomes illegal, invalid or unenforceable in any respect, the legality, validity and enforceability of the remaining provisions of this Note will not be affected and such remaining provisions will remain in full force and effect.

**18.     COSTS OF COLLECTION**
Borrower agrees to pay Lender all out-of-pocket expenses, including attorney's fees incurred by Lender in collecting or enforcing this Note or any other Loan Document or in preserving or disposing of any collateral granted as security for the payment of this Note or in defending any claim arising out of the execution of this Note or the Obligations which it evidences.

**19.     COUNTERPARTS**
Separate signatures are permissible, and all signatures hereto may be provided by the parties hereto in separate counterparts, each of which, when so executed and delivered, shall be an original, but all such counterparts shall together constitute one and the same instrument. Each counterpart may consist of a number of copies hereof, each signed by less than all, but together signed by all, of the parties hereto.

**[THE REMAINDER OF THIS PAGE HAS INTENTIONALLY BEEN LEFT BLANK. SIGNATURES ARE ON THE FOLLOWING PAGE]**

IN WITNESS WHEREOF, the undersigned have caused this Promissory Note to be executed and delivered as of the date or dates written herein below.

**BORROWER(S):**
**BORROWER:**
  Radonix, Inc., a California Corporation

_____  Date:_____ 12,17,20

Shahram Tork, President

**Payments should be made payable to:**
**All Payments should be sent to:**
**18301 Von Karman Ave, Suite 330,**
**Irvine, CA 92612**
**Please reference loan # 64768 on your payment**

# EXHIBIT "3"

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

||||||||||||||||||||||||||||||||||||||||||| 79.00
*$R0012375531$*
**2020000764289 8:00 am 12/24/20**
7 507A D11 S02 A34 A36   14
0.00 0.00 0.00 0.00 39.00 0.00 0.000.000.00 12.00

**RECORDING REQUESTED BY**

Stewart Title of California, Inc.

**AND WHEN RECORDED MAIL TO**

Center Street Lending VIII SPE, LLC, A
Delaware Limited Liability Company
18301 Von Karman Ave, Suite 330,
Irvine, CA 92612

Loan Number: 64768

SPACE ABOVE THIS LINE                                           FOR RECORDER'S USE

APN: 440-281-26 **Title Order #:** CA0310-20043961-38**Escrow #:** 49523

## DEED OF TRUST, SECURITY AGREEMENT AND
## FIXTURE FILING (WITH ASSIGNMENT OF RENTS AND LEASES)

This Deed of Trust, Security Agreement and Fixture Filing (with Assignment of Rents and Leases) ("**Deed of Trust**" or "**Deed**") is made 12/15/2020, between Radonix, Inc., a California Corporation, herein called **Trustor** (or " **Borrower(s)**"), whose address is 2600 Michelson Drive, Suite 1700, Tustin, CA 92780 and Center Street Lending VIII SPE, LLC, A Delaware Limited Liability Company, herein called **Beneficiary**, whose address is 18301 Von Karman Ave, Suite 330, Irvine, CA 92612, and Stewart Title, herein called **Trustee**,

**WITNESSETH:   THAT TRUSTOR IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE, TOGETHER WITH RIGHT OF ENTRY AND POSSESSION**, the following property (the "**Trust Estate**"):

(a)      all that certain real property now or hereafter acquired, located in the City of Newport Beach, County of Orange, State of CA (the "**Land**"), more particularly described as follows:

COMPLETE LEGAL DESCRIPTION IS ATTACHED HERETO AND MADE A PART HEREOF AS PER ATTACHED EXHIBIT "A"

APN: 440-281-26
Street Address: 509 Ventaja, Newport Beach, CA 92660

(b) all buildings, structures and other improvements now or in the future located or to be constructed on the Land (the "**Improvements**");
(c)      all tenements, hereditaments, appurtenances, privileges, franchises and other rights and interests now or in the future benefitting or otherwise relating to the Land or the Improvements, including easements, rights-

---

DEED OF TRUST & EXHIBIT A - CA-258
CA CFL License No: 60DBO-100252

Exempt from fee per GC 27388.1 (a) (2);
recorded concurrently "in connection with" a
transfer subject to the imposition of
documentary tax (DTT).

Page 1 of 12
12/16/2020 2:17 PM

**RECORDING REQUESTED BY**

**Stewart Title of California, Inc.**

**AND WHEN RECORDED MAIL TO**

Center Street Lending VIII SPE, LLC, A
Delaware Limited Liability Company
18301 Von Karman Ave, Suite 330,
Irvine, CA 92612

Loan Number: 64768

---

SPACE ABOVE THIS LINE                                            FOR RECORDER'S USE

**APN: 440-281-26 Title Order #: CA0310-20043961-38Escrow #: 49523**

## DEED OF TRUST, SECURITY AGREEMENT AND
## FIXTURE FILING (WITH ASSIGNMENT OF RENTS AND LEASES)

**This Deed of Trust, Security Agreement and Fixture Filing (with Assignment of Rents and Leases) ("Deed of Trust" or "Deed")** is made 12/15/2020, between Radonix, Inc., a California Corporation, herein called **Trustor (or " Borrower(s)")**, whose address is 2600 Michelson Drive, Suite 1700, Tustin, CA 92780 and Center Street Lending VIII SPE, LLC, A Delaware Limited Liability Company, herein called **Beneficiary**, whose address is 18301 Von Karman Ave, Suite 330, Irvine, CA 92612, and Stewart Title, herein called **Trustee**,

**WITNESSETH:    THAT TRUSTOR IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE, TOGETHER WITH RIGHT OF ENTRY AND POSSESSION**, the following property (the "**Trust Estate**"):

(a)     all that certain real property now or hereafter acquired, located in the City of Newport Beach, County of Orange, State of CA (the "**Land**"), more particularly described as follows:

COMPLETE LEGAL DESCRIPTION IS ATTACHED HERETO AND MADE A PART HEREOF AS PER ATTACHED EXHIBIT "A"

APN: 440-281-26
Street Address: 509 Ventaja, Newport Beach, CA 92660

(b)  all buildings, structures and other improvements now or in the future located or to be constructed on the Land (the "**Improvements**");
(c)     all tenements, hereditaments, appurtenances, privileges, franchises and other rights and interests now or in the future benefitting or otherwise relating to the Land or the Improvements, including easements, rights-

Exempt from fee per GC 27388.1 (a) (2);
recorded concurrently "in connection with" a
transfer subject to the imposition of
documentary tax (DTT).

of-way, development rights, mineral rights, water and water rights, pumps and pumping plants and all shares of stock evidencing the same (the "**Appurtenances**," and together with the Land and the Improvements, the "**Real Property**");

(d)    subject to the assignment to Beneficiary set forth herein, all rents, issues, income, revenues, royalties and profits now or in the future payable with respect to or otherwise derived from the Trust Estate or the ownership, use, management, operation, leasing or occupancy of the Trust Estate, including those past due and unpaid (the "**Rents**");

(e)    all present and future right, title and interest of Trustor in and to all inventory, equipment, fixtures and other goods (as those terms are defined in Division 9 of the California Uniform Commercial Code (the "**UCC**"), and whether existing now or in the future) now or in the future located at, upon or about, or affixed or attached to or installed in, the Real Property, or used or to be used in connection with or otherwise relating to the Real Property or the ownership, use, development, construction, maintenance, management, operation, marketing, leasing or occupancy of the Real Property, including furniture, furnishings, machinery, appliances, building materials and supplies, generators, boilers, furnaces, water tanks, heating, ventilating and air conditioning equipment and all other types of tangible personal property of any kind or nature, and all accessories, additions, attachments, parts, proceeds, products, repairs, replacements and substitutions of or to any of such property (the "**Goods**," and together with the Real Property, the "**Property**"); and

(f)    all present and future right, title and interest of Trustor in and to all accounts, general intangibles, chattel paper, deposit accounts, money, instruments and documents (as those terms are defined in the UCC) and all other agreements, obligations, rights and written materials (in each case whether existing now or in the future) relating to or otherwise arising in connection with or derived from the Property or any other part of the Trust Estate or the ownership, use, development, construction, maintenance, management, operation, marketing, leasing, occupancy, sale or financing of the Property or any other part of the Trust Estate, including (to the extent applicable to the Property or any other portion of the Trust Estate) (i) permits, approvals and other governmental authorizations, (ii) improvement plans and specifications and architectural drawings, (iii) agreements with contractors, subcontractors, suppliers, project managers, supervisors, designers, architects, engineers, sales agents, leasing agents, consultants and property managers, (iv) takeout, refinancing and permanent loan commitments, (v) warranties, guaranties, indemnities and insurance policies (whether or not required to be carried by Trustor pursuant to the terms hereof), together with insurance payments and unearned insurance premiums, (vi) claims, demands, awards, settlements and other payments arising or resulting from or otherwise relating to any insurance (whether or not Beneficiary is named as a loss payee of such insurance) or any loss or destruction of, injury or damage to, trespass on or taking, condemnation (or conveyance in lieu of condemnation) or public use of any of the Property, (vii) license agreements, service and maintenance agreements, purchase and sale agreements and purchase options, together with advance payments, security deposits and other amounts paid to or deposited with Trustor under any such agreements, (viii) reserves, deposits, bonds, deferred payments, refunds, rebates, discounts, cost savings, escrow proceeds, sale proceeds and other rights to the payment of money, trade names, trademarks, goodwill and all other types of intangible personal property of any kind or nature, and (ix) all supplements, modifications, amendments, renewals, extensions, proceeds, replacements and substitutions of or to any of such property (the "**Intangibles**").

Trustor further grants to Trustee and Beneficiary, pursuant to the UCC, a security interest in all present and future right, title and interest of Trustor in and to all Goods and Intangibles and all of the Trust Estates described above in which a security interest may be created under the UCC (collectively, the "**Personal Property**"). This Deed of Trust constitutes a security agreement under the UCC, conveying a security interest in the Personal Property to Trustee and Beneficiary. Trustee and Beneficiary shall have, in addition to all rights and remedies provided herein, all the rights and remedies of a "**secured party**" under the UCC and other applicable California law. Trustor covenants and agrees that this Deed of Trust constitutes a fixture filing under Section 9313 and 9402(6) of the UCC.

For the purpose of securing in such order of priority as Beneficiary may elect, (1) payment of an indebtedness in the sum of Nine Hundred Thousand Dollars and Zero Cents ($900,000.00) evidenced by that certain Promissory Note ("**Note**") of even date herewith executed by Trustor to the order of Beneficiary and any and all modifications, extensions or renewals thereof, whether hereafter evidenced by said Note or otherwise; (2) payment of interest on said indebtedness according to the terms of said Note; (3) payment of all other sums, with interest as herein provided, becoming due or payable under the provisions hereof to Trustee or Beneficiary; (4) due, prompt and complete observance, performance and discharge of each and every condition, obligation, covenant and agreement contained herein, or in said Note, or in any loan agreement relative to any indebtedness evidenced by said Note or in any document the Guaranty signed by Shahram Tork on 12/15/2020 guaranteeing repayment of said Note and any and all

related indebtedness shall not be secured by this Deed of Trust) or instrument evidencing, securing or pertaining to the indebtedness evidenced by said Note ("**Loan Documents**") and all indebtedness, modifications, renewals or extensions of any of the foregoing; (5) payment of such additional sums with interest thereon as may be hereafter borrowed from Beneficiary, its successors or assigns by Borrower(s) or the then record owner or owners of the Trust Estate when evidenced by another promissory note or notes, which are by the terms thereof secured by this Deed of Trust; and (6) payment of such additional sums, with interest thereon and any and all modifications, extensions or renewals thereof as may be previously or hereafter borrowed from any entity now or hereafter owned, controlled or managed by Center Street Lending Corporation or Center Street Lending Management, LLC, including, but not limited to: i) Center Street Lending Fund I, LLC, ii) Center Street Lending Fund IV, LLC, iii) Center Street Lending Fund IV SPE, LLC, iv) Center Street Lending V, LLC, v) Center Street Lending MP IV, LLC, vi) Center Street Lending MP III SPE, LLC, vii) Center Street Lending Fund X, LLC, viii) Center Street Loans, Inc. and ix) Center Street Lending VIII SPE, LLC (individually and together with any other entity under common control of Beneficiary "**Affiliate Lender**" and collectively "**Affiliate Lenders**"), by Trustor or the then record owner or owners of the Trust Estate when evidenced by another promissory note or notes, which are by the terms thereof secured by this Deed of Trust as identified on the **Cross-Collateralization and Cross-Default Agreement** signed by Trustor on or around 12/15/2020. **ALL THIRD PARTIES SHALL BE ADVISED THAT THE NOTE AMOUNT IDENTIFIED IN (1) ABOVE MAY SUBSTANTIALLY INCREASE DUE TO ADDITIONAL ADVANCES, DEFAULT INTEREST, FEES & CHARGES, CROSS-COLLATERALIZATION & CROSS-DEFAULT WITH OTHER LOANS WITH BENEFICIARY, ITS AFFILIATES OR WITH ANY PERSON WHO SUBSEQUENTLY HOLDS MORE THAN ONE PROMISSORY NOTE BY TRUSTOR WITHOUT FURTHER RECORDING OR NOTICE TO ANY THIRD PARTIES.**

Trustor shall pay before delinquent all taxes and assessments affecting the subject property or any part thereof, which appear to be prior or superior hereto, all cost, fees and expenses of this trust and all lawful charges, costs and expenses of any reinstatement of this Deed following default.

A default under any other Deed securing the above-referenced Note shall constitute a default under this Deed as well.

A default under any other Note by Trustor to Beneficiary shall constitute a default under this Deed, as well as any other Deeds by Trustor to Beneficiary.

Each of the following shall be considered an Event of Default of this Deed:

a.  The failure of Trustor to pay any installment of interest and/or principal under the Note or any other amount due under any Loan Document when due and payable whether on maturity, the date stipulated in any Loan Document, by acceleration or otherwise, without any requirements of notice from the Note Holder of such failure to pay under the Note;

b.  (i) Any Borrower(s) or Guarantor, or any individual who is a principal of Borrower(s) or any Guarantor, or any family member of any such person, occupying the Property as their primary, secondary, or other residence or (ii) the use of any portion of the proceeds of the loan for purposes other than business or commercial purposes;

c.  The failure of Trustor to make any payment due under any notes of Beneficiary, Affiliate Lenders, or any person who subsequently holds more than one promissory note made by Trustor;

d.  The failure of Trustor to comply with or to perform any other term, obligation, covenant or condition in this Deed or in any of the Loan Documents or to comply with or to perform any term, obligation or covenant or condition contained in any other agreement between Trustee and Trustor;

e.  The sale or attempted sale of the Property by Trustor without the consent of Beneficiary;

f.  The removal or attempted removal by Trustor of any Real Property and/or Personal Property included in the Trust Estate without the consent of Beneficiary;

g.  Abandonment of the subject Property by Trustor;

h.  The filing, execution or occurrence of i) a petition in bankruptcy by or against Trustor, ii) a petition or answer seeking a reorganization, composition, readjustment, liquidation, dissolution or other relief of the same or different kind under any provision of the Bankruptcy Code, iii) adjunction of Trustor as a bankrupt or insolvent, or insolvency in the bankruptcy equity sense, iv) an assignment by Trustor for the benefit of creditors, whether by trust, mortgage or otherwise, v) a petition or other

proceeding by or against Trustor for the appointment of a trustee, receiver, guardian, conservator or liquidator of Trustor with respect to all or substantially all of its property, vi) Trustor's dissolution or liquidation, or the taking of possession of Trustor's property by any governmental authority in connection with dissolution or liquidation.

i. A determination by Beneficiary that the security of the Deed is inadequate or in danger of being impaired or threatened from any cause whatsoever.

j. The occurrence of any event of default under (i) this Deed (ii) the Hazardous Substances Certificate and Indemnity Agreement executed by Trustor for the benefit of Trustee or (iii) any other documents, certifications or agreements Trustor has entered into in connection with the Note or the Loan Documents;

k. Failure to obtain from appropriate authorities all inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Property and, with respect to the use and occupancy of the same, including but not limited to certificates of occupancy and fire underwriting certificates;

l. If the Property constitutes a legal nonconforming use, the inability of the nonconforming use to be rebuilt to current density and used and occupied for such nonconforming purposes if damaged or destroyed.

m. Placement of a lien on the Trust Estate or any default of any liens in place as of the date of this document.

If there are deeds of trust or mortgages upon the property or other encumbrances which are prior in time or prior in right to this Deed, then Trustor promises for the benefit of Beneficiary to comply with the terms of those prior deeds of trust, mortgages or encumbrances. If Trustor fails to comply with such terms and defaults on those prior deeds of trust, mortgages or obligations, such default shall also be considered a default of this Deed, and Trustee or Beneficiary herein may advance the moneys necessary to remedy such defaults and shall apply the same, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine in its sole and absolute discretion. Beneficiary may also proceed on the prior in time or prior in right encumbrance default by exercising the same remedies it has on this Deed.

A. To protect the security of this Deed of Trust, Trustor agrees:

(1) To pay, perform, observe and discharge each and every condition, obligation, covenant and agreement for which this Deed of Trust has been given as security as provided above.

(2) To keep said Property in good condition and repair, not to remove or demolish any building thereon; to comply in all material respects with all applicable governmental regulations, zoning and building laws; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefore, to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof; not to commit, suffer or permit any act upon said Property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said Property may be reasonably necessary, the specific enumerations herein not excluding the general.

(3) Trustor agrees to provide, maintain and deliver to Beneficiary at Trustor's expense, fire and extended coverage insurance in an amount of not less that the full replacement value of any building which may exist on the subject property, with loss payable to Beneficiary. Trustor shall provide fire insurance protection on Trustor's furniture, fixtures and Personal Property in or on the subject Property in an amount equal to the full replacement value thereof and promises that any insurance coverage in this regard will contain a waiver of the insurers' right of subrogation against Beneficiary. In addition, Trustor shall, at Trustor's expense, maintain in full force policies of liability insurance and, if applicable, flood insurance, with Beneficiary as an additional insured thereunder on a primary non-contributing basis, insuring Trustor against all claims resulting from the injury to or the death of any person or the damage to or the destruction of any Property belonging to any person by reason of Beneficiary's interest hereunder or the use and occupancy of the subject Property by Trustor. Such insurance shall be in the following amounts: (1) $900,000.00 combined single limit liability insurance covering property damage and bodily injury; (2) flood insurance equal

to the replacement cost of the subject Real Property, or up to $900,000.00, whichever is less, is required if the collateral is located in a flood zone.

The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at the option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

Trustor shall not do or omit to do any act which will in any way impair or invalidate any insurance policy required by this Deed of Trust.

All insurance policies shall contain a written obligation of the insurer to notify Beneficiary in writing at least ten (10) days prior to any cancellation thereof.

(4)     To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of the Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to record, defend or collect any and all amounts due under this Deed and to foreclose this Deed.

(5)     To pay at least ten days before delinquency all taxes and assessments affecting said Property, including assessments on appurtenant water stock; to immediately pay and remove all encumbrances, charges and liens, with interest, on said Property or any part thereof, which may encumber any of the Trust Estate; and to pay all costs, fees and expenses of this Trust.

(6)     To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the default amount in the Note or as allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

(7)     Trustor shall hold Trustee and Beneficiary harmless from, and indemnify them for, any and all claims raised by any third party against Trustee or Beneficiary resulting from their interests hereunder or the acts of Trustor. Such indemnification shall include reasonable attorney's fees and costs, including cost of evidence of title.

(8)     Trustor shall take reasonable care of the Property and any structures thereon. Trustor shall keep all material licenses, permits and applicable governmental authorizations necessary for its operation of the Property in full force and effect. Trustor shall commit and permit no waste and do no act which will unduly impair or depreciate the value of the Property. If Trustor fails to take reasonable care as required, then Beneficiary or Trustee, at their option, may make necessary repairs and apply the same, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine in its sole and absolute discretion. Trustor shall not abandon any water rights, power rights or any rights of whatever nature which are appurtenant to the Property.

(9)     As used in this Section 9: (a) The words "**Hazardous Substances**" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "**Hazardous Substances**" are used in their very broadest sense and include, without limitation, any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "**Hazardous Substances**" also includes, without limitation, petroleum and petroleum byproducts or any fraction thereof and asbestos; (b) "**Environmental Law**" means federal laws and laws of jurisdiction where the property is located that relate to health, safety or environmental protection; (c) "**Environmental Cleanup**" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "**Environmental Condition**" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup. Trustor shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release and Hazardous Substances, on or in the property.

Trustor shall not do, nor allow anyone else to do, anything affecting the property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use or release of a Hazardous Substance, creates a condition that adversely affects the value of the property. The preceding two sentences shall not apply to the presence, use, storage on the property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the property. Trustor shall promptly give Beneficiary and Trustee written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the property and any Hazardous Substance or Environmental Law of which Trustor has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of a Hazardous Substance which adversely affects the value of the property. If Trustor learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the property is necessary, Trustor shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Beneficiary or Trustee for an Environmental Cleanup.

(10)   At all convenient and reasonable times, upon prior notice to Trustor, Beneficiary or Trustee shall have the right and license to go on and into the Property to inspect it in order to determine whether the provisions of this Deed are being kept and performed.

(11)   Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may make or do the same in such manner and to such extent as either may be deemed necessary to protect the security hereof, including securing, repairing and completing improvements to the Trust Estate, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which encumbers any of the Trust Estate; and, in exercising any such powers, pay necessary expenses, employ counsel and pay their reasonable fees.

B.   It is mutually agreed:

(1)   That any award in connection with any condemnation for public use of or injury to said Property or any part thereof is hereby assigned and shall be paid to Beneficiary, who may apply or release such monies received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(2)   That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(3)   That at any time or from time to time, without liability therefore and without notice, upon written request of Beneficiary and presentation of this Deed and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may; reconvey any part of said Property; consent to the making of any map or plat thereof; join in granting any easement thereon, or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(4)   That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said Note to Trustee for cancellation and retention or other disposition as Trustee may choose and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto". Five years after issuance of such full reconveyance, Trustee may destroy said Note and this Deed (unless directed in such request to retain them).

(5)    That Trustor absolutely and unconditionally hereby assigns, transfers, conveys and sets over to Beneficiary all the Rents; provided, however, prior to any default by Trustor in the payment, observance, performance and discharge of any condition, obligation, covenant or agreement of Trustor contained herein, Trustor shall have the right as the agent and fiduciary representative of Beneficiary for collection and distribution purposes only, to collect and receive the Rents as they become due and payable to be applied by Trustor to the payment of the principal and interest and all other sums due or payable on said Note and to the payment of all other sums payable under this Deed of Trust and, thereafter, so long as no default as aforesaid has occurred, the balance shall be distributed to the account of Trustor. Upon any such default or any other event of default under the Note or this Deed of Trust, Beneficiary may at any time without notice, either in person, by agent or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of the Property or any part thereof, in its own name or in the name of Trustor, sue for or otherwise collect the Rents, including those past due and unpaid and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees and expenses, to the payment of the principal and interest and all other sums due or payable on said Note and to the payment of all other sums payable under this Deed of Trust and in such order as Beneficiary may determine. The entering upon and taking possession of the Property, the collection of the Rents and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice. All leases and rental agreements now or hereafter affecting the Real Property, including all oil and gas leases and other subsurface leases and the royalties derived therefrom, are hereby assigned and transferred to Beneficiary by the Trustor, and Trustor hereby agrees and covenants that none of said leases or rental agreements will be modified or terminated without the consent in writing of Beneficiary. Trustor shall provide to Beneficiary an unconditional subordination agreement, in form acceptable to Beneficiary, executed by each tenant under a lease or rental agreement, if any, approved by Beneficiary, for a portion of said Real Property executed after the date hereof.

(6)    Trustor agrees that it will not (a) execute any further assignment of any of its right, title and interest in the Rents without the prior written consent of Beneficiary; (b) accept prepayments of any installments of Rents to become due under any leases or rental agreements in excess of one (1) month except prepayments in the nature of security which security will not exceed an amount equal to one (1) month's rent under the lease or rental agreement; (c) Trustor will not enter into, extend or modify any lease or rental agreement without the prior written consent of the Beneficiary, which Beneficiary may withhold in its sole and absolute discretion, or (d) accept a surrender of any lease or rental agreement.

(7)    That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said Property, which notice shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said Note and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at the time of sale. Trustee may postpone sale of all or a portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale. Beneficiary may proceed under the UCC as to all or any part of the Personal Property, and in conjunction therewith may exercise all of the rights, remedies and powers of a secured creditor under the Uniform Commercial Code. When all time periods then legally mandated have expired, and after such notice of sale as may then be legally required has been given,

Trustee may sell the Personal Property at a public sale to be held at the time and place specified in the notice of sale. It shall be deemed commercially reasonable for the Trustee to dispose of the Personal Property without giving any warranties as to the Personal Property and specifically disclaiming all disposition warranties. Alternatively, Beneficiary may choose to dispose of some or all of the Trust Estate, in any combination consisting of both Personal Property and Real Property, in one sale to be held in accordance with the law and procedures applicable to Real property, as permitted by the UCC. Trustor agrees that such a sale of Personal Property together with Real Property constitutes a commercially reasonable sale of the Personal Property. After deducting all costs, fees and expenses of Trustee and of this trust, including costs of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(8)     Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the County or Counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(9)     That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees of the Note secured hereby whether or not named as Beneficiary herein. In this Deed, whenever the contest so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(10)    That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

(11)    If all, or any part, of the subject property, or any interest therein, is sold, conveyed, alienated, transferred or encumbered (or if a beneficial interest in Trustor is sold, transferred or encumbered and Trustor is not a natural person), whether voluntary or involuntarily, without Beneficiary's prior written consent, which Beneficiary may withhold in its sole and absolute discretion, Beneficiary shall have the right, at its option, except as prohibited by law, to declare any indebtedness or obligations secured hereby, irrespective of the maturity date specified in any Note evidencing the same, immediately due and payable. If Beneficiary exercises this option, Beneficiary shall give Trustor notice of acceleration. The notice shall provide a period of not less than 10 days from the date the notice is delivered or mailed within which Borrower(s) must pay all sums secured by this Deed of Trust. If Trustor fails to pay these sums prior to the expiration of this period, Beneficiary may invoke any remedies permitted by this Deed of Trust without further notice or demand on Trustor.

(12)    TRUSTOR SPECIFICALLY ACKNOWLEDGES AND AGREES THAT, UPON THE EVENT OF DEFAULT BY TRUSTOR UNDER THE NOTE OR THIS DEED OF TRUST, BENEFICIARY OR NOTEHOLDER MAY AT ANY TIME UTILIZE A PROPERTY MANAGER OR OTHER AGENT TO COLLECT ANY AND ALL RENTS, ISSUES, AND PROFITS ASSIGNED UNDER THIS DEED OF TRUST DIRECTLY FROM TRUSTOR AND/OR ANY ONE OR MORE OF TRUSTOR'S TENANTS.

(13)    Trustor agrees that if there is a lawsuit, upon the request of Beneficiary, Trustor shall submit to the jurisdiction of the state courts located in the County of Orange, State of California, or the applicable federal district court that covers said county, and the lawsuit shall be tried and litigated therein. Trustor waives any right Trustor may have to assert the doctrine of forum non conveniens or to object to such venue.

Beneficiary requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Beneficiary's address, as set forth on page one of this Deed of Trust, as provided by Section 2924(b) of the California Civil Code.

Separate signatures are permissible, and all signatures hereto may be provided by the parties hereto in separate counterparts, each of which, when so executed and delivered, shall be an original, but all such counterparts shall together constitute one and the same instrument. Each counterpart may consist of a number of copies hereof, each signed by less than all, but together signed by all, of the parties hereto.

**[THE REMAINDER OF THIS PAGE HAS INTENTIONALLY BEEN LEFT BLANK.  SIGNATURES ARE ON THE FOLLOWING PAGE]**

The undersigned Trustor requests that copies of any Notice of Default and Notice of Sale be mailed to him at his address hereinbefore set forth.

Dated: 12/15/2020

**BORROWER(S):**
Radonix, Inc., a California Corporation

_____ Date: 12/17/20
Shahram Tork, President

### ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF California              )
                                 )    ss.
COUNTY OF _____ )

On _____, 20___, before me, _____, Notary Public, personally appeared, _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they/executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public
In and For Said County and State

ESCROW NO.:  049541 TITLE ORDER NO.: 910-2004396I-98

---

# ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the
individual who signed the document to which this
certificate is attached, and not the truthfulness,
accuracy, or validity of that document.

State of California

County of _Los Angeles_

On _12/17/20_ before me, _L D GARCES_ ,

A Notary Public personally appeared _Shamram Toric_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

L. D. GARCES
Notary Public – California
Los Angeles County
Commission # 2180425
My Comm. Expires Jan 20, 2021

(Seal)

**MAIL TAX STATEMENTS AS DIRECTED ABOVE**

## EXHIBIT "A"

## LEGAL DESCRIPTION

Please replace this page with the Exhibit "A" you will be recording with

**EXHIBIT A**
Legal Description

The land hereinafter referred to is situated in the City of Newport Beach, County of Orange, State of California, and is described as follows:

Parcel 1:

Lot 23 of Tract No. 6905, in the City of Newport Beach, County of Orange, State of California, as per map recorded in Book 308, Pages 27 to 32 inclusive of Miscellaneous Maps, in the office of the County Recorder of said County.

Except therefrom all oil, oil rights, minerals, mineral rights, natural gas rights and other hydrocarbons by whatsoever name known that may be within or under the parcel of land hereinabove described, together with the perpetual right of drilling, mining, exploring and operating therefor and storing In and removing the same from said land or any other land, including the right to whipstock or directionally drill and mine from lands other than said land, oil or gas wells, tunnels and shafts into, through or across the subsurface of said land, and to bottom such whipstocked or directionally drilled wells, tunnels and shafts under and beneath or beyond the exterior limits thereof, and to redrill, retunnel, equip, maintain, repair, deepen and operate any such wells or mines, without, however, the right to drill, mine, store, explore and operate through the surface or the upper 500 feet of the subsurface of said land, as reserved in the deed from The Irvine Company recorded in Book 12415, Page 992, Official Records.

Parcel 2:

An appurtenant non-exclusive easement for ingress and egress throughout Lot 65 of Tract No. 6905, as shown on a map recorded in Book 308, Pages 27 to 32 inclusive of Miscellaneous Maps, records of Orange County, California.

APN: 440-281-26

---

| Exhibit A | Created: 12/22/2020 | CA0310-20043961-38 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1920 Old Tustin Ave, Santa Ana, CA 92705

A true and correct copy of the foregoing document entitled (*specify*): _____
OBJECTION TO PROPOSED CHAPTER PLAN AND CONFIRMATION THEREOF _____
_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 11/30/2023_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Amrane (SA) Cohen (TR)     efile@ch13ac.com
United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) __11/30/2023_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor: John Fox, 509 Ventaja, Newport Beach, CA 92660-3511
Judge. Hon.: Mark D. Houle, United States Bankruptcy Court,  Central District of California
3420 Twelfth Street, Suite 325 / Courtroom 301, Riverside, CA 92501-3819

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 11/30/2023 | Maben May | /s/ Maben May |
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                              **F 9013-3.1.PROOF.SERVICE**